UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
```

S.N.C.,                                                    :

                                    Petitioner,            :
                                                           :
            -against-                                      :                18-CV-7680 (LGS)
                                                           :
JEFFERSON B. SESSIONS III, KIRSTJEN                        :                OPINION AND ORDER
NIELSEN, THOMAS DECKER, and U.S.                           :
DEPARTMENT OF HOMELAND SECURITY,                           :
                                                           :
                                    Respondents.  :

```
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _8/28/2018_

VALERIE CAPRONI, United States District Judge, Part I:

Petitioner S.N.C.[1] is a citizen of Jamaica who is detained pending Respondents'

execution of a final order of removal. She has filed a Petition for Writ of Habeas Corpus,

seeking an order: staying her removal pending Respondents' adjudication of two status

applications; releasing her from detention pending removal; and restraining Respondents from

transferring her to detention facilities outside the New York City area prior to removal. *See* Pet.

(Aug. 22, 2018), Dkt. 1. Petitioner has also filed an application for a temporary restraining order

("TRO") and a preliminary injunction, seeking substantially the same relief. *See* Proposed Order

(Aug. 22, 2018), Dkt. 8; Application (Aug. 22, 2018), Dkt. 11. Respondents have moved to

transfer this case to the District of New Jersey, arguing that this Court lacks jurisdiction. *See* Ltr.

(Aug. 23, 2018), Dkt. 6.

For the following reasons, Respondents' motion to transfer is temporarily STAYED.

Petitioner is GRANTED LEAVE TO AMEND the Petition no later than **August 30, 2018 at**

**12:00 p.m.,** to allow her to remove from her Petition "core" habeas claims challenging her

---

[1]     This Court, acting in its Part I capacity, permitted Petitioner to file the Petition anonymously pending
consideration of the issue by the case's assigned District Court Judge. *See* Order (Aug. 22, 2018), Dkt. 14.

detention.  If Petitioner fails to file an Amended Petition without "core" habeas claims by that time, Respondents' motion to transfer will be granted, and this case will be transferred to the District of New Jersey.

Petitioner's application for a TRO is GRANTED as to the stay of removal and DENIED WITHOUT PREJUDICE as to the release from detention and the stay of transfer to a different facility.  In accordance with Federal Rule of Civil Procedure 65(b)(2), the TRO will expire on **September 11, 2018 at 2:00 p.m.**  No later than **September 4, 2018 at 12:00 p.m.**, Respondents must show cause why the TRO should not be converted to a preliminary injunction.  Petitioner may file a response no later than **September 6, 2018 at 12:00 p.m.**  Assuming that this case has not been transferred to the District of New Jersey, the parties must appear for a hearing on Petitioner's application for a preliminary injunction on **September 7, 2018 at 10:30 a.m.** in Courtroom 1106 of the Thurgood Marshall U.S. Courthouse.

## BACKGROUND[2]

### I. Petitioner's Entry into the United States and Removal Proceedings

Petitioner, a citizen of Jamaica, entered the United States in 2000 on a B-1 or B-2 business or tourist visa.  *See* Pet. ¶ 46; S.N.C. Decl. ¶ 2.[3]  In 2004, she married a U.S. citizen who has subjected her to domestic violence, sexual servitude, and human trafficking.  *See* Pet. ¶¶ 46–47; S.N.C. Decl. ¶¶ 1, 4–5.  She has eight U.S. citizen children who were under her care until she was detained.  *See* Pet. ¶ 44.

---

[2]　Because Respondents have not yet responded to the Petition, the Court accepts all allegations in the Petition as true for purposes of this opinion.

[3]　Petitioner's declaration, labeled as Exhibit 11 to the Petition and referred to here as "S.N.C. Decl.," has been filed under seal pending consideration of the request to seal by the assigned District Court Judge.  *See* Order (Aug. 22, 2018), Dkt. 14.

In 2006, Petitioner was arrested on state criminal charges. *See* S.N.C. Decl. ¶ 5. The charges were dismissed, but Petitioner was summoned to appear before an immigration judge. *See id.* Respondents commenced removal proceedings at that time. *See* Pet. ¶ 48. Petitioner's order of removal became final in May 2012. *See id.*; S.N.C. Decl. ¶ 8. Petitioner, however, remained in the United States after her order of removal became final. *See* S.N.C. Decl. ¶¶ 5–8.

## II. Petitioner's Arrest, Detention, and Applications

On July 13, 2018, Petitioner, again facing criminal charges, appeared in state court. *See* Pet. ¶¶ 45, 55; S.N.C. Decl. ¶ 12. Upon leaving court, Petitioner was arrested by Respondents and transported to a detention facility in New Jersey. *See* Pet. ¶¶ 55–56; S.N.C. Decl. ¶ 12. Petitioner has been detained at that facility since that time. *See* S.N.C. Decl. ¶¶ 13–14.[4]

On July 31, 2018, Petitioner applied to the United States Citizenship and Immigration Services ("USCIS") for T Nonimmigrant Status. *See* Pet. ¶¶ 57, 71. T Nonimmigrant Status allows victims of human trafficking to obtain employment authorization, and, after a period of time, such individuals have the opportunity to apply for lawful permanent residence. *See id.* ¶ 82; 8 U.S.C. § 1101(a)(15)(T); USCIS, *Victims of Human Trafficking: T Nonimmigrant Status* (May 10, 2018), https://www.uscis.gov/humanitarian/victims-human-trafficking-other-crimes/victims-human-trafficking-t-nonimmigrant-status. If granted T Nonimmigrant Status, Petitioner can move to cancel her order of removal. *See* 8 C.F.R. § 214.11(d)(9). Additionally,

---

[4] The Court pauses to note the inexplicable conduct of Respondents in this situation. Petitioner has eight U.S. citizen children. *See* Pet. ¶ 3. Whatever Petitioner's immigration status, Respondents' act of summarily detaining her without notice or bail has denied her children the right to be nurtured by their mother. *See* CC Decl. ¶¶ 7–11 (sealed declaration of Petitioner's daughter, describing the difficulty that the family has faced since Petitioner "vanished"). Respondents' tactics may make sense in the context of an individual who is violent or likely to harm others, but, accepting the Petition's allegations as true, the Court is hard-pressed to understand what legitimate governmental interest is served by Petitioner's arrest and continued detention that could not be achieved in less draconian ways.

if, prior to adjudicating Petitioner's T Nonimmigrant Status application, USCIS determines that

her application is facially complete and "bona fide," USCIS will automatically stay the execution

of her order of removal until the application can be adjudicated.  *See id.* § 214.11(a), (e); Pet.

¶¶ 80–81; Ltr. (Aug. 24, 2018), Dkt. 12, at 2.  Petitioner's T Nonimmigrant Status application

has not yet been adjudicated or deemed bona fide.  *See* Pet. ¶ 83.

In addition to her T Nonimmigrant Status application, Petitioner filed a self-petition

pursuant to the immigration provisions of the Violence Against Women Act ("VAWA").  *See id.*

¶ 57.  If approved by USCIS, Petitioner's VAWA self-petition could allow her to obtain

employment authorization and deferred action from removal.  *See id.* ¶ 71; 8 U.S.C.

§ 1154(a)(1)(A)(iii); USCIS, *Battered Spouse, Children & Parents* (Feb. 16, 2016),

https://www.uscis.gov/humanitarian/battered-spouse-children-parents.

Finally, Petitioner also applied to the U.S. Immigration and Customs Enforcement

("ICE") for an administrative stay of removal, based primarily on her pending VAWA self-

petition, her pending T Nonimmigrant Status application, and protections afforded by the

Convention Against Torture ("CAT").  *See* Pet. ¶ 57; Pet. Ex. 2.

## III.    Procedural History

On August 22, 2018, prior to filing the Petition, Petitioner moved this Court (in its Part I

capacity) for permission to file parts of the Petition under seal, to file the Petition anonymously,

and for an emergency TRO staying her removal, releasing her from detention, and staying her

transfer to a different detention facility.  The Court held a brief conference, attended by counsel

for Respondents.  The Court denied the TRO application without prejudice but approved the

application for provisional sealing and anonymous filing.  *See* Order (Aug. 22, 2018), Dkt. 14;

Tr. of Aug. 22, 2018 conference.

On August 23, 2018, Petitioner filed the Petition and, due to the unavailability of the case's assigned District Court Judge, again appeared before this Court in its Part I capacity and reapplied for the TRO. Respondents filed a letter-motion seeking to transfer the case to the District of New Jersey, arguing that this Court lacks jurisdiction. *See* Ltr. (Aug. 23, 2018), Dkt. 6. The Court held a hearing, reserved decision on the motion to transfer, and denied the TRO without prejudice pending further briefing. *See* Order (Aug. 23, 2018), Dkt. 7. The parties filed further submissions on August 24, 2018. *See* Ltrs., Dkts. 12, 13. Respondents' August 24 letter represented that Petitioner will not be removed from the United States before September 10, 2018. *See* Ltr. (Aug. 24, 2018), Dkt. 12, at 3.

## DISCUSSION

### I. The Scope of Petitioner's Claims

Before turning to the parties' applications, it is worth clarifying the scope of relief that Petitioner is seeking. The Petition claims that Petitioner's removal from the United States would violate the Administrative Procedure Act ("APA") and procedural due process. *See* Pet. at 40 (header to first cause of action), 45 (header to fourth cause of action). The primary basis for this claim is that removal would deprive Petitioner of the opportunity to pursue her T Nonimmigrant Status application and VAWA self-petition. *See id.* ¶¶ 101, 104, 118–120. Petitioner argues that if she were removed from the United States before USCIS could rule on her applications, she would become statutorily ineligible for those programs. *See id.* ¶¶ 100, 116. Petitioner therefore seeks a stay of removal until USCIS can adjudicate her applications. *See id.* ¶¶ 103, 120. Put differently, this claim effectively challenges the *timing* of the execution of Petitioner's order of removal; it does not appear to challenge the validity of the removal order itself.

In addition, Petitioner seeks release from detention pending removal, *see id.* ¶¶ 107–113, 122–128, 131, 133–135, or (presumably in the alternative) an order restraining Respondents

from transferring her to detention facilities outside the New York City area prior to removal, *see id.* ¶ 132.

## II. Respondents' Motion to Transfer Is Stayed; Petitioner Is Granted Leave to Amend Her Petition to Cure Its Jurisdictional Defects

### A. The Applicable Law

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). "The question whether [a court] has jurisdiction over [a] habeas petition breaks down into two related subquestions. First, who is the proper respondent to that petition? And second, does [the court] have jurisdiction over him or her?" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004).

#### 1. The Proper Respondents

A writ of habeas corpus must "be directed to the person having custody of the person detained." 28 U.S.C. § 2243; *see also id.* § 2242 (a petition for a writ of habeas corpus must allege "the name of the person who has custody over" the petitioner). In *Rumsfeld v. Padilla*, the Supreme Court established a "default rule" that the proper respondent in a habeas petition is "the warden of the facility where the prisoner is being held," that is, the person who has physical and immediate custody over the petitioner. 542 U.S. at 435.

*Padilla*, however, recognized that this rule—known as the immediate custodian rule—is subject to exceptions. *See id.* at 435–36 & nn.8–9; *id.* at 452 (Kennedy, J., concurring). First, *Padilla* expressly limited the rule to "core" habeas challenges, that is, challenges to the petitioner's present detention or physical confinement. *See id.* at 435 (stating that the immediate custodian rule applies to "habeas challenges to present physical confinement"); *id.* at 437–38

(distinguishing cases in which the immediate custodian rule did not apply because they involved challenges to forms of "custody" other than "present physical confinement"); *id.* at 439 ("In challenges to present physical confinement, we reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent.").  In so doing, the Supreme Court left open whether the immediate custodian rule applies to challenges to forms of "custody" other than physical confinement, such as immigration removal, military service, and so forth.

Second, even within the realm of challenges to physical detention, *Padilla* created some uncertainty about whether the immediate custodian rule applies when the petitioner is detained pursuant to the immigration laws.  *Compare id.* at 437 (stating that the habeas statute makes "no . . . distinction" between detention based on criminal convictions and detention for reasons "other than federal criminal violations"), *with id.* at 435 n.8 (leaving open whether the immediate custodian rule applies to challenges to detention pending deportation).

The Second Circuit has not answered either of these questions to date.  A majority of district courts in this Circuit, however, have held that the immediate custodian rule applies to "core" immigration-based habeas challenges (*i.e.*, challenges to immigration-based detention)[5] but does not apply to "non-core" challenges (*i.e.*, challenges to forms of custody other than

---

[5]       *See, e.g.*, *Suraiva v. Cioppa*, No. 18-CV-6628, Tr. of July 31, 2018 conference; *Abraham v. Decker*, No. 18-CV-3481, 2018 WL 3387695, at *2–3 (E.D.N.Y. July 12, 2018) (collecting cases); *Adikov v. Mechkowski*, No. 16-CV-3797, 2016 WL 3926469, at *1 (S.D.N.Y. July 18, 2016); *Concepcion v. Aviles*, No. 14-CV-8770, 2015 WL 7766228, at *1 (S.D.N.Y. Mar. 12, 2015); *Phrance v. Johnson*, No. 14-CV-3569, 2014 WL 6807590, at *2 (S.D.N.Y. Dec. 3, 2014); *Singh v. Holder*, No. 12-CV-4731, 2012 WL 5878677, at *2 (S.D.N.Y. Nov. 21, 2012); *Allen v. Holder*, No. 10-CV-2512, 2011 WL 70558, at *1 (S.D.N.Y. Jan. 4, 2011); *Guo v. Napolitano*, No. 09-CV-3023, 2009 WL 2840400, at *1 (S.D.N.Y. Sept. 2, 2009) (collecting cases); *Shehnaz v. Ashcroft*, No. 04-CV-2578, 2004 WL 2378371, at *4 (S.D.N.Y. Oct. 25, 2004).  *But see, e.g.*, *You v. Nielsen*, No. 18-CV-5392, 2018 WL 3677892, at *6–7 (S.D.N.Y. Aug. 2, 2018); *Farez–Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 494 (S.D.N.Y. 2009).

physical confinement, such as orders of removal).[6]  These courts have reasoned that the writ of

habeas corpus acts upon the person effecting the form of custody that is challenged.

*See Abraham*, 2018 WL 3387695, at *2; *Guo*, 2009 WL 2840400, at *2; *Somir*, 354 F. Supp. 3d

at 217; *cf. Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494–95 (1973)

("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person

who holds him in what is alleged to be unlawful custody.").  If the challenged custody is physical

detention, then the immediate, physical custodian is the proper respondent.  *See Abraham*, 2018

WL 3387695, at *2; *Guo*, 2009 WL 2840400, at *2.  If, on the other hand, the petition challenges

a broader form of legal, non-physical custody, then the proper respondent is the person with legal

authority to effect that custody.  *See Somir*, 354 F. Supp. 3d at 217.

Respondents argue that, under *Padilla*, the "legal control test" applies only if "there is no

warden with present physical custody of the petitioner," that is, only if the petitioner is not

presently in physical detention.  Ltr. (Aug. 23, 2018), Dkt. 6, at 4 (citing *Padilla*, 542 U.S. at

439).  This argument misreads *Padilla*.  *Padilla* states that the legal control test "comes into play

when there is no immediate physical custodian with respect to the *challenged* 'custody.'"  542

U.S. at 439 (emphasis added); *see also id.* (stating that the immediate custodian rule did not

apply in prior cases because in those cases "there was no immediate physical custodian with

respect to the 'custody' *being challenged*" (emphasis added)).  Put differently, the focus of the

inquiry is the form of custody challenged by the petition, not whether the petitioner is in physical

custody.  Regardless of whether the petitioner is in physical custody at the time that she files the

---

[6]     *See, e.g.*, *Somir v. United States*, 354 F. Supp. 2d 215, 217 & n.2 (E.D.N.Y. 2005) (collecting cases);
*Campbell v. Ganter*, 353 F. Supp. 2d 332, 337–38 (E.D.N.Y. 2004); *Batista-Taveras v. Ashcroft*, No. 03-CV-1968,
2004 WL 2149095, at *6 (S.D.N.Y. Sept. 23, 2004); *Garcia-Rivas v. Ashcroft*, No. 04-CV-292, 2004 WL 1534156,
at *1 (S.D.N.Y. July 7, 2004).

petition, if the custody *being challenged* is non-physical, then the immediate custodian rule does not apply to that claim.

### 2.     The Court's Jurisdiction over the Proper Respondents

After determining the proper respondent to a petition, a court must ask whether it has jurisdiction over him or her.  *See Padilla*, 542 U.S. at 434.  "District courts are limited to granting habeas relief 'within their respective jurisdictions.'"  *Id.* at 442 (quoting 28 U.S.C. § 2241(a)).  The Supreme Court has interpreted this language to require "that the court issuing the writ have jurisdiction over the custodian."  *Id.* (quoting *Braden*, 410 U.S. at 495).  It is unclear whether this limitation refers to personal jurisdiction, venue, or some sort of *sui generis* "habeas jurisdiction."  *See id.* at 434 n.7 ("The word 'jurisdiction,' of course, is capable of different interpretations.  We use it in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court."); *id.* at 451 (Kennedy, J., concurring) ("In my view, the question of the proper location for a habeas petition is best understood as a question of personal jurisdiction or venue."); *id.* at 463 (Stevens, J., dissenting) (stating that this question "is not one of federal subject-matter jurisdiction" but, rather, "one of venue").

In *Padilla*, the Supreme Court established a "general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district:  the district of confinement."  *Id.* at 443.  With this rule, the Court rejected a more flexible standard based on the respondent's amenability to service of process or on traditional venue considerations.  *See id.* at 444.  Instead, the Court held that the proper district for a "core" habeas claim is the district that has "territorial jurisdiction over the proper respondent."  *Id.* at 444.  Once again, though, the Court limited this rule to "core" petitions challenging present physical detention, implicitly leaving open whether the rule applies to "non-core" challenges.  *See id.* at 442–43, 446–47.

As for "non-core" challenges, courts in this Circuit have relied on a combination of venue and personal jurisdiction principles in deciding whether they have jurisdiction. *See, e.g.*, *Somir*, 354 F. Supp. 2d at 218; *Campbell*, 353 F. Supp. 2d at 338; *Batista-Taveras*, 2004 WL 2149095, at *6; *Garcia-Rivas*, 2004 WL 1534156, at *3. Those courts applying venue principles have relied on "traditional venue considerations," such as the location of "material events," the location of "records and witnesses pertinent to the claim," and the relative "convenience of the forum" for each party. *Garcia-Rivas*, 2004 WL 1534156, at *3; *see also, e.g.*, *Somir*, 354 F. Supp. 2d at 218; *Batista-Taveras*, 2004 WL 2149095, at *6. Those relying on principles of personal jurisdiction have asked whether the respondent can be reached by service of process and whether the respondent falls under the state's long-arm laws. *See, e.g.*, *Campbell*, 353 F. Supp. 2d at 338.

### 3. "Mixed" Habeas Petitions

The Petition before this Court presents both "core" and "non-core" claims. As to the "non-core" claim, Petitioner seeks a stay of removal, *see* Pet. ¶¶ 96–106, 114–121; as for the "core" claim, Petitioner seeks immediate release from detention, *see id.* ¶¶ 107–113, 122–128, 131, 133–135. Petitioner's request that Respondents be restrained from transferring her to a different detention facility, *see id.* ¶ 132, is also arguably a "core" claim, as it relates directly to the conditions of Petitioner's physical confinement.

The case law provides little to no clarity as to how the custodian rules should apply to "mixed" habeas petitions. In *Calderon v. Sessions*, Judge Crotty found that "non-core" challenges "predominate[d]" over "core" challenges in a petition and, thus, applied the legal control test to the entire petition. *See* No. 18-CV-5222, 2018 WL 3677891, at *3 (S.D.N.Y. Aug. 1, 2018). Put differently, *Calderon* analyzed the petition as a whole when applying the custodian rules, rather than applying the rules on a claim-by-claim basis. In *Mahmood v.*

*Nielsen*, Judge Torres took a different approach: she found that venue was proper for the petitioner's "non-core" claims and then applied the doctrine of "pendent venue" to assert venue over the remaining "core" claims. *See* 312 F. Supp. 3d 417, 423–24 (S.D.N.Y. 2018) (reasoning that "a federal court may in its discretion hear pendent claims which arise out of the same nucleus of operative facts as a properly venued federal claim, even if venue of the pendent claim otherwise would not lie" (emphasis omitted)).[7]

The Court finds neither of these approaches satisfactory. By applying the legal control test to the petition as a whole, *Calderon* appears to have run afoul of *Padilla*'s first rule: that the immediate custodian rule must govern "core" claims challenging present physical detention. *See Padilla*, 542 U.S. at 435. And by applying pendent venue to the petition's "core" claims, *Mahmood* appears to have run afoul of *Padilla*'s second rule: that "core" claims must be brought in the district that has territorial jurisdiction over the custodian of the petitioner's present physical detention. *See id.* at 443.

When faced with a "mixed" petition, the approach most faithful to *Padilla* and this Circuit's case law is to apply the immediate custodian rule to the petitioner's "core" claims and the legal custodian rule to the petitioner's "non-core" claims. The petition must then be transferred to the district that has both (a) territorial jurisdiction over the immediate custodian

---

[7]     In two other cases cited by Respondents, courts in this District applied the immediate custodian rule to petitions raising both "core" and "non-core" claims. *See* Ltr. (Aug. 23, 2018), Dkt. 6, Exs. D, E (citing *Alsomairi v. Dawson*, No. 18-CV-7000, Tr. of Aug. 8, 2018 conference; *Pastor v. Sessions*, No. 18-CV-6941, Tr. of Aug. 3, 2018 conference). These courts' rulings may have been based on sloppiness in the applicable petitions. In those cases' petitions—as in the Petition here—the prayers for relief asked only for a release from detention (a "core" claim), even though the petitions' causes of action also asked for a stay of removal (a "non-core" claim). *See* Pet. ¶¶ 130–135; *Alsomairi*, No. 18-CV-7000, Dkt. 1; *Pastor*, No. 18-CV-6941, Dkt. 1; *see also Alsomairi*, Tr. of Aug. 8, 2018 conference, at 15 ("I think it's clear . . . that the focus of the petition . . . is detention, that is obvious from the prayer of relief at the end of the document where the petitioner requests relief from custody."). Because these rulings appear to have been premised on an unduly narrow reading of the applicable petitions, the Court does not find them persuasive.

and (b) venue and personal jurisdiction over the legal custodian.[8]  This approach respects both the governing precedent in this Circuit and the cardinal rules of *Padilla* (which, for all its limitations, remains the leading Supreme Court precedent on this issue).

The Court is mindful that this approach arguably runs afoul of a third rule in *Padilla*: that "there is generally only one proper respondent to a given prisoner's habeas petition." *Id.* at 434.  The Court believes that this statement applies only to petitions that challenge a single type of custody.  When a "mixed" petition challenges multiple forms of custody, and thus implicates a number of different custodians, it is unlikely that the Supreme Court would require only a single custodian as a respondent.

### B.      Application to This Case

Petitioner brings "core" claims challenging her detention and possible transfer to another facility.  Applying the immediate custodian rule, the proper respondent for these claims is the warden of Petitioner's present detention facility.  That facility is located in the District of New Jersey.  *See* Pet. ¶ 7.  This Court does not have jurisdiction over these claims, as Petitioner has brought them in the Southern District of New York, outside of the "district of confinement." *Padilla*, 542 U.S. at 443.

Turning to Petitioner's "non-core" claim, the form of custody challenged here is an order of removal.  Applying the legal control test, most district courts in this Circuit have held that the Attorney General is the proper respondent for "non-core" claims challenging orders of removal. *See, e.g.*, *Somir*, 354 F. Supp. 2d at 217–18 & n.2 (collecting cases); *Batista-Taveras*, 2004 WL 2149095, at *6.  In these courts' view, the Attorney General is a "custodian" over individuals

---

[8]      There could be a situation in which no such single district exists.  Because that is not likely the case here, the Court expresses no opinion as to whether the "core" and "non-core" claims in a petition could properly be split into two petitions filed in separate districts.

facing exclusion and deportation due to the "near total control" that he exercises over them. *Somir*, 354 F. Supp. 2d at 217–18. Thus, under the governing case law, Attorney General Jefferson B. Sessions III is the proper respondent for Petitioner's "non-core" claim.[9] This Court has jurisdiction over this claim, as the Attorney General "is unquestionably subject to long-arm jurisdiction under New York law," *Henderson v. I.N.S.*, 157 F.3d 106, 124 n.19 (2d Cir. 1998); because "a substantial part of the events or omissions giving rise to the claim occurred" in this District, 28 U.S.C. § 1391(e)(1)(B); and because venue in this district does not pose an inconvenience for the parties or otherwise offend other "traditional venue considerations," *Batista-Taveras*, 2004 WL 2149095, at *6.[10]

The upshot of this analysis is that, as the Petition currently stands, Respondents' motion to transfer is well-founded. New Jersey is the only district that has jurisdiction over Petitioner's "core" claims. But because Petitioner's counsel has expressed concerns about Petitioner's continuity of counsel were this case to be transferred, *see* Tr. of Aug. 23, 2018 conference at 31, the Court will stay the motion to transfer in order to provide Petitioner a brief opportunity to amend her Petition. *See* 28 U.S.C. § 2242 (a petition for writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001). No later than **August 30, 2018 at 12:00 p.m.**, Petitioner may file an Amended Petition that omits her "core" habeas claims. If Petitioner fails

---

[9]     As the Court has discussed, by seeking a stay of removal, the Petition challenges the timing of the execution of the order of removal, not the validity of the removal order itself. The cases that hold that the Attorney General was a proper respondent mostly involved challenges to the validity of removal orders, not applications for stays of removal. *See, e.g.*, *Somir*, 354 F. Supp. 2d at 217–18; *Batista-Taveras*, 2004 WL 2149095, at *6. Because the Petition offers no reason why the Attorney General should not be the legal custodian in both types of cases, the Court will apply that principle to this case.

[10]     Petitioner has also named Secretary of Homeland Security Kirstjen Nielsen, ICE New York Field Office Director Thomas Decker, and the U.S. Department of Homeland Security as Respondents. This Court leaves to the assigned District Court Judge whether those Respondents are appropriate parties to this action.

to do so, Respondents' motion to transfer will be granted, and this case will be transferred to the District of New Jersey.

Petitioner argues that this Court, sitting in its Part I capacity, should provisionally grant jurisdiction over the Petition in order to allow the parties to more "fully litigate" the issue before the case's assigned District Court Judge. *See* Ltr. (Aug. 24, 2018), Dkt. 13, at 2. The Court disagrees. The parties have already submitted extensive briefing on this issue, and the Court held oral argument. *See* Pet. ¶¶ 10–36; Ltr. (Aug. 23, 2018), Dkt. 6; Ltr. (Aug 24, 2018), Dkt. 13; Tr. of Aug. 23, 2018 conference. The Court does not believe that further briefing would bear any new fruit. And the interests of both parties are best served by resolving the jurisdictional question promptly and moving forward with a briefing schedule on the merits of the Petition.

Petitioner also argues that the critical interests served by habeas petitions should not "suffocate" in "stifling formalisms" or "arcane and scholastic procedural requirements." Ltr. (Aug. 24, 2018), Dkt. 13, at 6 (quoting *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist.*, 411 U.S. 345, 350 (1973)). The Court agrees that the facts of this case merit close judicial scrutiny. But habeas petitioners, like all other litigants, must follow the basic rules of law and procedure. Petitioner chose to bring this case in this District, knowing full well the jurisdictional battle that she would face. *See* Pet. ¶¶ 10–36. She cannot now be heard to complain about procedural injustice, when she could have brought this case in the proper district in the first instance.

For all these reasons, Respondents' motion to transfer this case is stayed to allow Petitioner to file an Amended Petition. If no Amended Petition is filed by **August 30, 2018 at**

**12:00 p.m.**, or if an Amended Petition maintaining "core" habeas claims is filed, this case will be immediately transferred to the District of New Jersey.

### III.    Petitioner's Application for a TRO Is Granted in Part and Denied Without Prejudice in Part

The relief requested in Petitioner's application for a TRO is substantially the same as that sought by her Petition: she seeks a stay of removal, immediate release from detention, and an order restraining Respondents from transferring her to a different detention facility prior to removal. *See* Application (Aug. 22, 2018), Dkt. 11; Proposed Order (Aug. 22, 2018), Dkt. 8.

To determine whether a TRO should be granted, courts look to four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). The third and fourth factors "merge when the Government is the opposing party." *Id.* at 435.

#### A.    The TRO Is Granted as to the Stay of Removal

Beginning with the stay of removal, Petitioner has made a sufficient showing that she will succeed on the merits of her claim. Petitioner cites numerous cases holding that she has a procedural due process right to pursue her two status applications; these cases suggest that even if those applications will not ultimately be adjudicated in Petitioner's favor, Petitioner has a right to make the applications and have them fully adjudicated without undue interference. *See, e.g.*, *Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (holding that an alien has "a right to seek relief" which is "analytically separate and distinct from a right to the relief itself"); *You*, 2018 WL 3677892, at *10 (without a stay of removal, the opportunity to submit applications to seek relief from removal would be "a mere illusion" (quoting *Ceta v. Mukasey*, 535 F.3d 639, 647

(7th Cir. 2008))). *But see Rojas-Reyes v. I.N.S.*, 235 F.3d 115, 124 (2d Cir. 2000) (whether a non-citizen has "a constitutionally protected interest" in the adjudication of applications providing relief from removal "is not well-settled"). Based on this showing—and without prejudice to Respondents demonstrating to the contrary at the hearing for a preliminary injunction—Petitioner has offered sufficient proof of a likelihood of success on the merits.

Turning to the second *Nken* factor, while the burden of removal cannot, without more, "constitute the requisite irreparable injury," *Nken*, 556 U.S. at 435, Petitioner alleges that removal would cause her irreparable injury because it would render her ineligible for T Nonimmigrant Status, regardless of the merits of her application. *See* Pet. ¶ 89. This is a sufficient showing of irreparable injury at this stage.

Finally, as to the third and fourth *Nken* factors, a stay will enable Respondents to fully brief the Petition without the time pressure of a looming removal date. It will also allow the Court time to decide the important issues raised in this case. On the other side of the equation, there is little harm to Respondents by delaying Petitioner's removal by two weeks, the term of this TRO.

For all these reasons, the Court grants Petitioner a TRO enjoining her removal for 14 days and sets a hearing on her application for a preliminary injunction for **September 7, 2018 at 10:30 a.m.** in Courtroom 1106 of the Thurgood Marshall U.S. Courthouse. No later than **September 4, 2018 at 12:00 p.m.**, Respondents must show cause why the TRO should not be converted to a preliminary injunction. Petitioner may file a response no later than **September 6, 2018 at 12:00 p.m.**

**B.** **The TRO Is Denied Without Prejudice as to the Application for Immediate Release and as to the Order Preventing Petitioner's Transfer**

Turning to Petitioner's applications that she be immediately released from detention or, in the alternative, that Respondents be restrained from transferring her to a detention facility outside the New York City area, these applications are denied without prejudice. This Court does not have jurisdiction over these "core" habeas claims, for all the reasons that the Court has discussed. If Petitioner persists in these claims, and the Court transfers this case to the District of New Jersey, that court will have jurisdiction to act on these applications. If, on the other hand, Petitioner files an Amended Petition and drops these claims, then these applications will be denied as moot.

For all these reasons, Petitioner's application for a TRO is granted only as to the stay of removal.

## CONCLUSION

To summarize the Court's rulings:

1. Respondents' motion to transfer is STAYED. Petitioner is GRANTED LEAVE TO AMEND the Petition no later than **August 30, 2018 at 12:00 p.m.** If Petitioner fails to file an Amended Petition without "core" habeas claims, Respondents' motion to transfer will be granted, and this case will be transferred to the District of New Jersey.

2. Petitioner's application for a TRO is GRANTED as to the stay of removal and DENIED WITHOUT PREJUDICE as to the release from detention and the stay of transfer to a different detention facility. The TRO will expire on **September 11, 2018 at 2:00 p.m.**

3. No later than **September 4, 2018 at 12:00 p.m.**, Respondents must show cause why the TRO should not be converted to a preliminary injunction. Petitioner may file a response no later than **September 6, 2018 at 12:00 p.m.**

4.      The parties must appear for a hearing on Petitioner's application for a preliminary injunction on **September 7, 2018 at 10:30 a.m.** in Courtroom 1106 of the Thurgood Marshall U.S. Courthouse.

**SO ORDERED.**

**Date/Time:**      **August 28, 2018 at 2:00 p.m.**      **VALERIE CAPRONI**
                    **New York, New York**                **United States District Judge**
                                                          **Part I**