USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/20/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
S.N.C.,                                                       :
                                      Petitioner,             :
                                                              :   18 Civ. 7680 (LGS)
              -against-                                       :
                                                              :   **OPINION AND ORDER**
JEFFERSON B. SESSIONS et al.,                                 :
                                      Respondents.            :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

For the reasons to follow, Respondents' Motion to Dismiss for Lack of Jurisdiction is denied, and Petitioner's motion to convert the temporary restraining order ("TRO") into a preliminary injunction is denied without prejudice to renewal. Petitioner's application to compel her release is granted.

## I. BACKGROUND

Petitioner S.N.C. brings this claim for a writ of habeas corpus, alleging that executing her removal order before her T-Visa and Violence Against Woman Act ("VAWA") applications are adjudicated violates the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment. *See* 28 U.S.C. § 2241(c) (precluding the writ of habeas corpus unless a prisoner "is in custody in violation of the Constitution or laws . . . of the United States"). Petitioner seeks a stay of removal pending the adjudication of her applications. Respondents filed a motion to dismiss, arguing that 8 U.S.C. § 1252(a)(5), (g) strip this Court of jurisdiction over Petitioner's habeas claims. Petitioner argues to the contrary, but in the alternative, that if § 1252 strips this Court of jurisdiction over her claim, this statutory provision violates the Suspension Clause as applied to her. *See* U.S. Const. art I, § 9, cl. 2.

**A.     Facts**

S.N.C. is the mother of eight minor children -- all United States citizens -- and she has lived in this country for approximately 18 years. After fleeing an abusive partner in Jamaica in 2000, S.N.C. entered the United States on a B1/B2 Tourist or Business Visa. Upon arriving in the United States, S.N.C. was the victim of two separate incidents of human trafficking. In 2004, following these incidents, S.N.C. married a United States citizen, who further subjected her to domestic violence, sexual servitude and human trafficking. New York State's Division of Criminal Justice Services found that S.N.C. is a human trafficking survivor under Social Services Law §483-cc(b) and N.Y. Penal Law §230.34.

In 2006, S.N.C. was arrested on state criminal charges. The charges were dropped, but S.N.C. was summoned to appear before an immigration law judge ("IJ"). The IJ entered an order of removal against her; the Board of Immigration Appeals ("BIA") denied her appeal; and S.N.C.'s order of removal became final in May 2012. Fearful of her husband's threats, S.N.C. did not mention her abusive relationship or violence to the IJ or her attorney during her removal proceedings. Her counsel also did not advise her of her right to file a T-Visa application, a type of visa that Congress created for survivors of human trafficking. Although S.N.C. was required to leave the United States, her husband forced her to remain in the country to continue serving him and to ensure she repaid him legal fees associated with the immigration proceedings.

On July 13, 2018, when S.N.C. arrived at court to address criminal charges falsely instigated by her husband's paramour, Immigration Customs Enforcement ("ICE") officers arrested S.N.C. and transported her to a detention facility in New Jersey. On July 31, 2018, S.N.C. submitted an application for T-Nonimmigrant Status and shortly thereafter filed a VAWA

2

Self-Petition based on her experiences with human trafficking and domestic abuse.  S.N.C. also requested a Stay of Removal via deferred action with ICE.

**B.      Temporary Restraining Order**

On August 28, 2018, Judge Caproni, acting as the Part 1 judge, granted a TRO as to the stay of removal and denied without prejudice Petitioner's request for release from detention.  *See S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 411 (S.D.N.Y. 2018).  Judge Caproni found that Petitioner made a "strong showing" that she is likely to succeed on the merits of her due process claim because "Petitioner has a right to make the [visa] applications and have them fully adjudicated without undue interference." *Id.* at 411–12.  She also found that Petitioner showed irreparable injury by demonstrating that her deportation would render her ineligible for the T-Visa application she seeks.  *Id.* at 412.  Finally, Judge Caproni found that a stay would allow the Court to adjudicate the important issues raised in this case but would cause "little harm to Respondents by delaying Petitioner's removal" for the duration of the TRO.[1]  *Id.*  On November 8, 2018, the Court heard oral argument on Petitioner's motion to convert the TRO into a preliminary injunction and Respondent's motion to dismiss.

**C.      The Status of Petitioner's Immigration Applications**

On November 7, 2018, the eve of the November 8, 2018, conference, Respondents filed a letter informing the Court as to the status of Petitioner's visa applications.  On September 4,

---

[1] After Respondents submitted a motion to transfer this action to the United States District Court for the District of New Jersey, Judge Caproni held that this Court could exercise jurisdiction only over Petitioner's non-core habeas claims (challenges to forms of custody other than physical confinement) but not "core" habeas claims (challenges to immigration-based physical detention). *S.N.C.*, 325 F. Supp. 3d at 406–07, 410.  Accordingly, Judge Caproni granted leave for Petitioner to amend her Petition and omit her "core" habeas claims.  *Id.* at 412.  On September 4, 2018, Petitioner filed an amended petition, limiting her claims to those related to a stay of removal.

3

2018, United States Citizenship and Immigration Services ("USCIS") determined that Petitioner's application was not bona fide and issued two Requests for Evidence ("RFEs") in furtherance of its ultimate adjudication of Petitioner's application. Despite determining that Petitioner's application for T Nonimmigrant Status was not bona fide on September 4, Petitioner's counsel did not receive RFEs until two months later, on November 5, 2018. Petitioner has until January 31, 2018, to respond to the RFEs. On September 13, 2018, USCIS issued a determination that Petitioner has made a prima facie case for classification as a VAWA self-petitioner. Pursuant to 8 U.S.C. § 1229a(c)(7)(C)(iv), Petitioner can file a motion to reopen on the basis of her VAWA petition with the BIA, which would result in an automatic stay of removal while the motion to reopen is being adjudicated. On October 15, 2018, ICE denied Petitioner's application for an administrative stay of removal pursuant to 8 C.F.R. § 241.6.

### D. ICE's Decision Regarding Petitioner's Removal

At the November 8, 2018, conference, the parties were directed to engage in settlement discussions and report to the Court by November 20, 2018. In the parties' report, Respondents stated that ICE "has agreed to exercise its discretion to stay petitioner's removal through March 8, 2018," and "would reconsider its custody determination if circumstances change." Respondents argue that this decision renders the action moot. The Court reserves decision on Petitioner's habeas petition, including whether it is moot. It should be noted that Respondent has not agreed to the full relief that Petitioner seeks -- a stay of removal proceedings until her pending applications have been adjudicated.

## II. STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1) Motion to Dismiss

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge the court's subject-matter jurisdiction by means of a motion to dismiss. In reviewing a motion to dismiss under Rule 12(b)(1), a court must "accept as true any facts plausibly alleged in a complaint, and must draw all inferences in favor of the [non-moving party]." *MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy*, 861 F.3d 40, 44 (2d Cir. 2017). In considering a motion to dismiss, courts may look to documents referenced in the complaint, documents that the plaintiff relied on in bringing suit and matters of which judicial notice may be taken. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016); and then quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). Where jurisdictional facts are in dispute, "the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

### B. Preliminary Injunction

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).

The standard for showing success on the merits is contingent on whether the injunction is mandatory or prohibitory. *Id.* at 37. Mandatory injunctions disrupt the status quo, and a party

seeking one must show "a clear or substantial likelihood on the merits." *Id.* Conversely, a party seeking an injunction that maintains the status quo need only raise serious questions on the merits and show that the balance of hardships weighs in their favor. *See id.* "Because the proposed injunction's effect on the status quo drives the standard, [courts] must ascertain the status quo -- that is, the last actual, peaceable uncontested status which preceded the pending controversy." *Id.* (internal quotation marks omitted).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. §2241(a), (c)(3)); *accord Calderon v. Sessions*, No. 18 Civ. 5222, 2018 WL 3677891, at *2 (S.D.N.Y. Aug. 1, 2018). Respondents argue that 8 U.S.C. § 1252(a)(5), (g) strip this Court of jurisdiction over Petitioner's claims. Petitioner argues that if § 1252(a)(5), (g) are so construed, they would violate the Suspension Clause as applied to her, because they would deprive her of her habeas claim and leave her without a forum to challenge the Executive's legal authority to remove her before the adjudication of her applications for a T-Visa and a VAWA Self-Petition, which were designed respectively to protect victims of human trafficking and domestic abuse from deportation. The Suspension Clause provides, "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2.

"[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and [ ] an alternative interpretation of the statute is fairly possible, [courts] are

obligated to construe the statute to avoid such problems." *Golb v. Attorney Gen. of N.Y.*, 870 F.3d 89, 103 (2d Cir. 2017), *cert. denied* 138 S. Ct. 988 (2018) (first alteration in original) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 299–300 (2001)). "Indeed, it is an elementary rule in construing acts of Congress that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *United States v. Barrett*, 903 F.3d 166, 178 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Skilling v. United States*, 561 U.S. 358, 406 (2010)).

Because construing § 1252 to deprive this Court of jurisdiction over Petitioner's claims would raise serious Suspension Clause concerns for the reasons argued by Petitioner, and an alternative interpretation of the statue is fairly possible, § 1252 must be construed to avoid such constitutional concerns.

1. **Section 1252(a)(5)**

Section 1252(a)(5) states that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). "[S]ection 1252(a)(5)'s jurisdictional bar applies equally to preclude . . . an indirect challenge" to an order of removal. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011); *accord Singh v. USCIS*, No. 15 Civ. 1411, 2016 WL 1267796, at *3 (S.D.N.Y. Mar. 30, 2016), *aff'd*, 878 F.3d 441 (2d Cir. 2018). However, "a suit brought against immigration authorities is not *per se* a challenge to a removal order; whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." *Id.*

In *Delgado*, while a reinstated removal order was pending, the petitioner sought to force USCIS to adjudicate the merits of a I-212 application, a form by which aliens who have been

7

deported or removed seek consent to reapply for admission to the United States. 643 F.3d at 53–54. An I-212 waiver is a prerequisite to an adjustment of status. *Id.* at 55. If the waiver were granted and the petitioner's adjustment of status were adjudicated favorably, the petitioner's removal order would be rendered invalid. *Id.* As such, although the I-212 waiver, if granted, would not itself prevent the petitioner's removal, the "Form I-212 waiver of inadmissibility and the adjustment of status to that of a lawful permanent resident would render the [removal] order invalid." *Id.* (alteration and internal quotation marks omitted). The Second Circuit concluded that it lacked jurisdiction because the legal status the *Delgado* petitioner sought was "inextricably linked" to the validity of his removal order. *See id.* at 55–56.

Conversely, this Court has jurisdiction over Petitioner's claims because her T-Visa application is not inextricably linked to the validity of her removal order. In *Delgado*, the petitioner's readjustment of status application, if successful, would have nullified her removal order. *Id.* at 55. In contrast, if Petitioner's T-Visa application prevails and she is granted legal status, it will *not* nullify her removal order. As the Government admits in its surreply, Petitioner's removal order was issued by an IJ and affirmed by the BIA, and unlike a removal order issued by the Department of Homeland Security ("DHS"), it is not subject to automatic cancellation after she is granted her T-Visa. *See* 8 C.F.R. § 214.11(d)(9)(i)–(ii). To cancel the removal order, Petitioner must file a motion to reopen and terminate removal proceedings with the IJ or BIA. *Id.* The determination of the motion to reopen and terminate is within the discretion of the IJ or BIA. *See* 8 C.F.R. § 214.11(d)(9)(ii). This is not a case where permitting adjudication of Petitioner's T-Visa application inevitably would nullify her removal order. *See, e.g.*, *Singh*, 2016 WL 1267796, at *5 (holding that § 1252(a)(5) barred an action for judicial review of the denial by USCIS of an application for adjustment of status filed by an alien who

8

had been ordered removed because the requested relief "necessarily impugns the validity of the underlying order of removal"); *Noor v. Homan*, No. 17 Civ. 1558, 2018 WL 1313233, at *4 (E.D.N.Y. Feb. 27, 2018) ("The practical effect of changing Plaintiff's status to that of a legal permanent resident would be to void the removal order."). Therefore, § 1252(a)(5) does not prevent the Court from exercising jurisdiction in this case.

### 2. Section 1252(g)

Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim . . . arising from the decision or action by the Attorney General to . . . execute removal orders," unless they are raised as part of "constitutional claims or questions of law" in a petition for review in the appropriate court of appeals. 8 U.S.C. § 1252(g). In *Reno v. Am.-Arab Anti-Discrimination Comm.*, the Supreme Court clarified that § 1252(g) is not a "'zipper' clause" that prevents judicial review of all actions related to deportation proceedings. 525 U.S. 471, 482 (1999). Instead, "[t]he provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.' There are of course many other decisions or actions that may be part of the deportation process . . . ." *Id*. at 482 (quoting 8 U.S.C. § 1252(g)). The Court observed that Congress enacted § 1252(g) to protect the executive's discretionary actions. *Id.* at 483–85.

In light of this guidance, courts in this district have held that § 1252(g) does not strip courts of jurisdiction when the petitioner is seeking to challenge ICE's legal authority over a removal order, rather than its discretionary decisions regarding removal orders. For example, in *Calderon v. Sessions*, Judge Crotty found that § 1252(g) did not deprive the court of jurisdiction over the petitioner's habeas claim because the petitioner was not challenging ICE's prosecutorial discretion, but rather its "legal authority to exercise such discretion when the subject of the

9

removal order also has a right to seek relief made available by the DHS." 2018 WL 3677891, at *5 (emphasis omitted). Similarly, in *You v. Nielsen*, Judge Torres held that notwithstanding § 1252(g), the court could (and did) retain jurisdiction to decide whether ICE's decision to remove a Chinese national before his motion to reopen was adjudicated would violate the Immigration and Nationality Act. 321 F. Supp. 3d 451, 455–58 (S.D.N.Y. 2018). Judge Torres reasoned that this type of claim does not ask "why the Secretary chose to execute the removal order," but "whether the way Respondents acted accords with the Constitution and the laws of this country." *Id.* at 457. While the first question challenges ICE's discretion to execute a removal order, the second question asks whether the Constitution or other law deprives ICE of power over the removal order. Because the petitioner's claim fell within the latter category, the court in *You* exercised jurisdiction over the claim. *Id.*

Courts outside this district also have distinguished between challenges to ICE's discretion and its legal authority over removal orders, finding that district courts have jurisdiction when the petitioner's claim falls into the latter category. In *Fatty v. Nielsen*, the district court held that § 1252(g) did not deprive it of jurisdiction over a petitioner's request for a stay of his removal pending the adjudication of his petition for a T-Visa. No. 17 Civ. 1535, 2018 WL 3491278, at *1–2 (W.D. Wash. July 20, 2018). As in *Calderon* and *You*, the court in *Fatty* distinguished between a challenge to ICE's "discretionary denial of his request for a stay of removal," which "clearly would be precluded by § 1252(g)," and the petitioner's "collateral legal and constitutional challenges" to the removal process. *Id.* at 2. Because the petitioner's claim was within the latter category, the court exercised jurisdiction.

Petitioner's claim here is a constitutional challenge to ICE's legal authority and falls beyond § 1252(g)'s reach. Like the petitioners in *Calderon, You,* and *Fatty*, Petitioner does not

challenge the wisdom of ICE's decision to remove her, but disputes ICE's legal authority, despite the constraints imposed by the Due Process Clause, to remove her while her visa applications are being adjudicated. *See You*, 321 F. Supp. 2d at 457. Her claim is a "collateral legal and constitutional challenge[]" to ICE's legal authority, and § 1252(g) does not deprive this Court of jurisdiction over it. *See Fatty*, 2018 WL 3491278 at *2.

### 3. The Government's Arguments

Citing *Vasquez v. United States*, No. 15 Civ. 3946, 2015 WL 4619805, at *4 (S.D.N.Y. Aug. 3, 2015), as well as other similar cases, the Government argues that § 1252 prevents district courts from reviewing any applications for a stay of removal because "only a court with jurisdiction to review a removal order has jurisdiction to stay a removal order." This argument is at odds with the Second Circuit's statement in *Delgado,* that "whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." 643 F.3d at 55. Here, the type of relief Petitioner is seeking, the right to have her T-Visa application adjudicated will not, even if granted, nullify her removal order. The Court has habeas jurisdiction to adjudicate Plaintiff's request for a stay of removal.

### B. Preliminary Injunction

Petitioner's motion to convert the TRO into a preliminary injunction is denied without prejudice to renewal because Petitioner has not demonstrated imminent irreparable injury. Irreparable harm, the first element of the preliminary injunction inquiry, is "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015); *accord Brennan Ctr. for Justice v. U.S. Dep't of Justice*, No. 17 Civ. 6335, 2018 WL 637424, at *2 (S.D.N.Y. Jan 31, 2018). In light of ICE's provisional decision not to execute

Petitioner's removal until March 8, 2019, Petitioner has not shown imminent injury.

### C. Application for Release

Federal courts have "inherent authority to admit to bail petitioners in immigration cases." *Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 153 (2d Cir. 2007); *accord Lopez v. Sessions*, No. 18 Civ. 4189, 2018 WL 2932726, at *15 (S.D.N.Y. June 12, 2018). Although § 1252 changed the immigration landscape, it "did not qualify [courts'] inherent authority to admit to bail petitioners in immigration cases." *Elkimya*, 484 F.3d at 153; *accord Lopez*, 2018 WL 2932726, at *15. In considering a petitioner's fitness for bail, courts assess (1) "whether the petition raises substantial claims" and (2) "whether extraordinary circumstances exist[] that make the grant of bail necessary to make the . . . remedy effective." *Elkimya*, 484 F.3d at 154. (internal quotation marks omitted).

Petitioner raises substantial claims as to whether her due process rights are infringed if she is removed before her visa applications are adjudicated. The Due Process Clause of the Fifth Amendment requires that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993); *accord Calderon*, 2018 WL 3677891, at *9.

Petitioner alleges that executing her removal order before her T-Visa and VAWA applications are adjudicated violates the Due Process Clause of the Fifth Amendment. The T-Nonimmigrant Status is a form of immigration relief for non-citizen victims of human trafficking. Congress passed the Trafficking Victims Protection Act, which created T-Nonimmigrant relief, in part because "providing battered immigrant women . . . with protection against deportation" allows them to seek help without "fearing that the abuser will retaliate by

withdrawing . . . access to an immigration benefit under the abuser's control." Victims of Trafficking and Violence Protection Act of 2000, Pub L. No. 106-386, 114 Stat. 1464. One of the requirements for T Nonimmigrant Status is the applicant's physical presence in the United States. 8 C.F.R. § 214.11(b)(2). If an applicant for a T-Visa is in danger of imminent deportation as a result of her trafficking, she is entitled to use a procedural safeguard of requesting a bona fide determination from USCIS, which USCIS must review. *Id.* at § 214.11(d)(7). Upon a finding that the application is bona fide, an automatic administrative stay of the final order of removal is granted and remains in effect until a final decision on the T-Visa application is made. *Id.* at § 214.11(e)(3). If Petitioner is removed from the United States before a finding on her bona fide application, she will no longer be eligible to pursue a T-Visa.

Petitioner has raised substantial claims as to whether she has a protectable interest in having her application for T Nonimmigrant Status adjudicated. The Second Circuit has not addressed this issue. The only case that the parties have cited and that the Court has found that directly addresses the issue held that the petitioner had a liberty interest and "raised a procedural due process claim based upon his interest [in] obtaining a meaningful determination on his T visa application." *Fatty*, 2018 WL 3491278, at *2.[2] "It is well established that the Fifth Amendment

---

[2] The court in *Fatty* also determined that the petitioner did not have a protected property interest in his T-Visa or its adjudication because

> a benefit is not a protected entitlement if government officials may grant or deny it in their discretion. Instead, a reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms. Here, the applicable regulations make clear that "[t]he filing of an application for T nonimmigrant status has no effect on DHS authority or discretion to execute a final order of removal . . . ."

2018 WL 3491278, at *2 (alteration, internal quotation marks and citations omitted) (citing *inter alia* 8 C.F.R. § 214.11(d)(1)(ii)).

entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003); *see also Wong Wing v. United States*, 163 U.S. 228, 238 (1896). I find the *Fatty* holding to be persuasive, and no party has cited a decision holding otherwise. As the Government's only argument at this juncture on Petitioner's due process claim is that she "lacks a liberty or property interest in adjudication of her T-Visa application prior to her removal" the remainder of the due process analysis is not addressed. Petitioner's case also presents extraordinary circumstances that require granting bail for any remedy related to the adjudication of her visa applications to be effective. First, Petitioner is not pursuing a routine application to adjust her status. Instead, she is applying for a specific form of relief that Congress made available for victims of domestic violence and human trafficking, including those with final orders of removal pending against them. *See* 8 C.F.R. § 214.11(d)(1)(ii). Second, Petitioner's personal circumstances are not that of the usual Petitioner. Petitioner's psychologist confirms that the difficulties she faced as a human trafficking and domestic abuse survivor have left her with post-traumatic stress disorder, a condition that the detention environment aggravates. Her caseworker, who is also a counselor, also reports that Petitioner is suffering depression and physical pain as result of being separated from her children, the youngest of which she is still nursing. *See Kiaddii v. Sessions*, 18 Civ. 1584, at *3 (S.D.N.Y. Mar. 2, 2018) (finding extraordinary circumstances when the petitioner presented evidence that "her health has deteriorated while in ICE's custody"); *D'Alessandro v. Mukasey*, No. 08 Civ. 914, 2009 WL 799957, at *3 (W.D.N.Y. Mar. 25, 2009), (finding extraordinary circumstances when petitioner had "a number of serious, potentially debilitating health problems"); *see also United States v. Mett*, 41 F.3d 1281, 1282 n.4 (9th Cir. 1995) (internal quotation marks omitted) (noting that "[s]pecial circumstances" warranting bail for habeas petitioners "include a serious deterioration

of health while incarcerated"). Release would allow Petitioner to access trafficking-related counselling to manage her symptoms and to care for her eight children. These circumstances are extraordinary and require that Petitioner be released before her health declines past the point at which she is unable to adjudicate her visa applications.

Respondents argue that granting detention-related relief here would vitiate the rule in *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004), which requires that detention-related habeas claims under § 2241 ("core" habeas claims) be brought within the district in which the petitioner is detained. This argument is unavailing. The *Padilla* court interpreted the limits of a court's jurisdiction by analyzing the types of habeas relief Congress authorized pursuant to § 2241. *Id.* But federal courts' *inherent* authority to grant bail pending the adjudication of a habeas claim does not require "an express statutory grant of authority." *Mapp*, 241 F.3d at 226. In this sense, it is a form of ancillary relief to Petitioner's non-core claim for a stay of removal pending the adjudication of her visa applications. The Government argues that granting release would allow "any petitioner" to do an end-run around the *Padilla* rule. This argument is unconvincing. Relief under *Mapp* is confined to truly extraordinary circumstances, and, as the Government recognizes in its letter opposing Petitioner's motion to compel release, most petitioners would not be able to satisfy this rigorous test.

As the Amended Petition raises substantial claims, and extraordinary circumstances exist that make the grant of bail necessary to allow Petitioner to adjudicate her visa applications, Petitioner's motion to compel her release is granted.

## IV. CONCLUSION

For the foregoing reasons, the Government's motion to dismiss is **DENIED**. Petitioner's motion to convert the TRO into a preliminary injunction is **DENIED** without prejudice to renewal. Petitioner's motion to compel her release is **GRANTED**.

The Clerk of Court is respectfully directed to close the motion at Docket Number 21.

Dated: November 20, 2018
 New York, New York

SO ORDERED

HON. LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE